IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-3882
_____

UNITED STATES OF AMERICA,

                        Plaintiff-Appellant,

versus

BRIAN McKEEVER,

                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____

October 15, 1993

Before KING and JOLLY, Circuit Judges, and PARKER[1], District Judge.

PER CURIAM:

On July 23, 1992, Special Agent Carl W. Pike (Pike) of the Drug
Enforcement Administration (DEA) applied for two warrants to search
Appellee, Brian McKeever's rural property, and the property next to
his that was owned by his parents.  The Magistrate issued a search
warrant for each property.  The warrants were executed on July 27,
1993, resulting in the seizure of miscellaneous papers, marijuana,
seeds, grow lights, fertilizer, other marijuana cultivation
equipment and twenty-eight (28) marijuana plants.

McKeever was indicted for knowingly and intentionally
manufacturing marijuana.  Prior to trial, McKeever filed a motion

_____

[1] Chief Judge of the Eastern District of Texas, sitting by
designation.

to suppress evidence seized during the execution of two search warrants. The district court, after hearing, granted the motion, and continued the trial, pending the outcome of the Government's appeal.

McKeever's Motion to Suppress alleged that there was insufficient probable cause for the magistrate to issue the two warrants because the affidavit underlying the search warrants did not supply material dates or contain current information, did not corroborate the information supplied by or establish the veracity and reliability of the confidential informant (CI), and contained information obtained through a prior illegal search. In response, the government argued that the affidavits clearly established probable cause for issuance of the warrants, but that, even if the warrants were defective, the facts in the affidavits were sufficient for law enforcement officers to rely objectively in good faith on the warrants, which would render the evidence admissible at trial. The district court concluded that "the 'good faith exception' of [*United States v.*] *Leon*, 468 U.S. 897 (1984) and its progeny is not applicable because the 'warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" Appellant urges two related grounds for reversal. First that the district court erred in finding that the affidavit in support of the search warrant did not set forth probable cause, and second that Agent Pike acted in objectively reasonable good faith belief that the warrant was valid. Principles of judicial restraint and

2

precedent dictate that, in most cases, we should not reach the probable cause issue if a decision on the admissibility of the evidence under the good-faith exception of *Leon* will resolve the matter. *United States v. Craig*, 861 F.2d 818, 820 (5th Cir. 1988). Because we find that the affidavit underlying the warrants was sufficient to support the magistrate's finding of probable cause, we make no distinction in our analysis between the validity of the warrant and the agent's good faith execution of the warrant. The district court's order suppressing the evidence seized, and McKeever's resulting inculpatory statement is, therefore, reversed.

## STANDARD OF REVIEW

On appeal, this Court will "'construe the sufficiency of the affidavit independently of the district court' and [is] not limited by the 'clearly erroneous' standard of review." *United States v. Jackson*, 818 F.2d 345, 348 (5th Cir. 1987) (quoting *United States v. Freeman*, 685 F.2d 942, 948 (5th Cir. 1982)). Like the district court, however, this Court owes "'deference to the magistrate's determination of probable cause and...must construe the affidavit in a common-sense manner.'" *Jackson*, 818 F.2d at 348 (quoting *United States v. McKinney*, 758 F.2d 1036, 1042 (5th Cir. 1985)).

## THE MERITS

The government argues that the district court erred in finding that the affidavit in support of the search warrants did not set forth probable cause. The applications for the two search warrants were supported by identical affidavits. Our task involves a two step analysis. First, are any pieces of information set out in the

3

affidavit subject to exclusion because of hearsay, lack of corroboration, prior illegal search, or other challenge? Second, does the information which was properly before the magistrate amount to probable cause? The probable cause determination is simply a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *United States v. Peden*, 891 F.2d 514, 518 (5th Cir. 1989); *Illinois v. Gates*, 462 U.S. 213, 239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)

Pike begins the affidavit with a recitation of Pike's experience and training in the detection of clandestine marijuana cultivation facilities. He continues with a detailed profile of the typical marijuana production operation. McKeever did not challenge the inclusion of these first two parts of the affidavit.

Next Pike sets out the information gathered in the investigation of McKeever. On October 4, 1989, McKeever received a shipment of merchandise from Dansco, an outfit engaged in the sale of equipment for use in hydroponic gardening, and which advertised in <u>High Times</u>, a magazine that promotes the cultivation and use of marijuana. On October 1, 1990, McKeever purchased the real estate adjoining his parents' property. The affidavit states that McKeever uses (present tense verb, but no date) his parents' mailing address. Again, there is no challenge to the inclusion of these items.

CONFIDENTIAL INFORMANT STATEMENTS

4

The affidavit next recites a statement by a confidential informant of the Louisiana State Police (CI), that McKeever purchased the property and built a structure in which he intended to cultivate marijuana. The CI further stated that he has purchased marijuana from McKeever on several occasions and that McKeever's parents have full knowledge of McKeever's marijuana trafficking. McKeever challenged the inclusion of the CI's statements in the affidavit based on lack of corroboration and lack of dates. The fact that the CI's statements were against his own penal interest amounts to substantial corroboration. *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075 (1971). However, the agent also corroborated the purchase of the property and the building of the structure. The affidavit does not date the purchase of the marijuana claimed by the CI, and the magistrate would not know if the alleged sale was too remote in time to consider for purposes of determining probable cause. However, the date of the purchase of the property was in the affidavit and the magistrate could reasonably conclude that the construction of the A-frame building commenced after October 1, 1990.

## ON SITE SURVEILLANCE

The final segment of the affidavit concerns information gathered in an on site surveillance of McKeever's property. The affidavit does not contain the date on which the on site surveillance occurred, but because McKeever's A-frame building was referenced in the surveillance report, the magistrate could again only conclude that the date of the surveillance was subsequent to

5

the purchase of the property and the construction of that building.

a. Staleness

The information given to a magistrate in an application for a search warrant must be timely and probable cause must be found to exist at the time the warrant issues. The proof must be of facts closely related in time to the issuance of the warrant in order to justify a finding of probable cause at that time. *United States v. Hyde*, 574 F.2d 856, 864 (5th Cir. 1978). However, "if an affidavit recites activity indicating protracted or continuous conduct, time is of less significance." *Id*. at 865.

This Court is not convinced that the lack of specific dates deprived the magistrate of essential information in determining probable cause. The affidavit alleged a scheme that included the purchase of land, the construction of a building, and the setup of a hydroponic marijuana growing facility with equipment purchased from a distributor specializing in such equipment. The entire scheme was limited to a time frame of approximately twenty-one (21) months between the purchase of the property and the application for the search warrant. In addition to the common sense conclusion that the construction of the A-frame structure consumed some portion of the 21 month period, the affidavit sets out the long term nature of marijuana cultivation: "Marijuana plants grown indoors take ten to twelve weeks to reach full maturity....It is a common practice in indoor marijuana growing to stagger the planting process in order to have a constant, year round harvest of finished product." "[I]f the information of the affidavit clearly shows a

6

longstanding, ongoing pattern of criminal activity, even if fairly long periods of time have lapsed between the information and the issuance of the warrant, the information need not be regarded as stale." *United States v. Craig*, 861 F.2d 818, 822 (5th Cir. 1988) (quoting *United States v. Webster*, 734 F.2d 1048, 1056 (5th Cir. 1984), *cert. denied*, 469 U.S. 1073 (1984). Also, the nature of the evidence sought is relevant. Courts demand less current information if the evidence sought is of the sort that can be reasonably be expected to be kept for long periods of time in the place to be searched. *Id*. at 832. We find that, given the specific facts of this case, the magistrate was not obligated to exclude the information gathered in the on site surveillance or the informant's statements concerning the purchase of property, construction of the building, and the older McKeever's knowledge on the basis of staleness. The CI's statements that he bought marijuana from McKeever several times may also be considered as part of the larger picture of McKeever's ongoing involvement with illicit marijuana trade. The magistrate must, of course, be cognizant of the limited weight that the allegation was entitled to because the affidavit failed to include the date that the sales allegedly took place.

b. Prior Illegal Search

McKeever argues that the surveillance information recited in the affidavit was obtained as a result of an illegal search and thus cannot be used to support the issuance of the search warrants. Agents crossed private property belonging to McKeever's parents by

7

going down the common drive between the two properties.  Agents then entered McKeever's private property in order to observe the marijuana plants concealed in the brush.

The Fourth Amendment does not provide blanket protection against searches and seizures on private property.  Rather, the Fourth Amendment protects those areas in which citizens have a reasonable expectation of privacy. *Katz v. United States*, 399 U.S. 347, 88 S.Ct. 507 (1967).  McKeever, in asserting that the agents violated his reasonable expectation of privacy in the marijuana plot, attempts to establish the reasonableness of that expectation under Fourth Amendment jurisprudence.  McKeever argued that the A-frame structure was his home and the marijuana plants were within the curtilage of that home.  McKeever urges us to assume that the district court's opinion implicitly found that the A-frame structure was McKeever's home and the underbrush behind the structure was a place where society was prepared to recognize a reasonable expectation of privacy, and to affirm this implicit holding.  We decline, as we find no basis for this assumption in the lower court's opinion.  The lower court's order referred to "Mr. and Mrs. McKeever's home" and to the "A-frame structure."  The Court made no finding that the A-frame structure was McKeever's home, nor is there any reference to the structure as a home, nor to the area where the plants were concealed as curtilage.   The district court made no finding that the surveillance amounted to an illegal search, the results of which must therefore be deleted from the magistrate's consideration in determining probable cause.

8

However, in order to decide whether to affirm or reverse the court's decision that the warrants were based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, we must determine if the information from the surveillance can be legally considered in the equation.

Assuming, without so finding, that McKeever could establish that the A-frame is his home, we turn to the four fact specific factors set out in *United States v. Pace*, 955 F.2d 270, 273 n.2 (5th Cir. 1992) for determining whether a search was within the protected curtilage of a home:

> (1) the proximity of the area claimed to be curtilage to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) the steps taken by the resident to protect the area from observation by people passing by.

After examining the photographs admitted into evidence, as well as the testimony, we conclude that the marijuana plants were not in the curtilage of the A-frame.

Although it seems that it would be easy to establish exactly how far the marijuana plants were from the A-frame, the evidence before the court was not clear. McKeever testified that the buckets were spread out in some brush that began approximately 35 to 50 feet away from the structure, but was not clear about how far the buckets were from the structure. Agent Pike testified that the buckets were approximately 50 yards away from the house. Based on the pictures admitted into evidence at the hearing, it appears that the brush did begin about 35 to 50 feet from the back of the A-

9

frame, but it is not possible to determine how far back into the brush the pots were located.

Second, evidence established that Mckeever's ten acres were fenced on three sides, and no fence or other enclosure had been built in the immediate area surrounding the A-frame, or between the A-frame and the marijuana pots. No gate blocked the common drive into the area, and no fence blocked entrance onto McKeever's property from the common drive. In fact the agents did not cross any fences between the public road and the marijuana pots.

Third, McKeever did not use the area where the pots were hidden for anything except hiding marijuana pots. It was not part of a yard, or garden, or storage area, or walkway among out buildings, nor did it serve any other purpose associated with the normal use of a private residence.

Fourth, McKeever attempted to conceal the area by not cutting down the brush, or mowing the area in question, and by the placement of the building and marijuana plot out of site of the public road. However, there was no privacy fence, or other enclosure erected in an attempt to establish a privacy interest in the area in question.

The cleared area around the A-frame could be claimed as curtilage, but to expand the curtilage some undefined distance into the underbrush would be to ignore the concept of curtilage, and simply extend Fourth Amendment protection to the boundary lines of privately owned property. The open fields doctrine teaches that the Fourth Amendment provides no protection for items on private

10

property outside of a structure or the curtilage of a home, or other place where society is prepared to recognize a reasonable expectation of privacy. The fact that the officer conducting the surveillance violated trespass laws has no relevance to the Fourth Amendment inquiry. *Oliver v. United States*, 466 U.S. 170, 183, 104 S.Ct. 1735 1743-44, 80 L.Ed.2d 214 (1984). We find that McKeever has not established an expectation of privacy that society is prepared to consider reasonable in the area where the marijuana plants were hidden. Therefore, there is no basis on which to exclude the information gathered during the on site surveillance from consideration in determining probable cause to issue the warrants.

## CONCLUSION

Given all the facts and circumstances set out in the affidavits, and not excludable on legal grounds, we find that the magistrate's determination that there was probable cause to issue the search warrants was correct. Therefore, we reverse the district court's decision to suppress the evidence gained as a result of the execution of the warrants, and remand for further proceedings.